# United States Court of Appeals for the Federal Circuit

2007-1311

YINGBIN-NATURE (GUANGDONG) WOOD INDUSTRY CO., LTD.
(also known as Yingbin (Shunde-Foshan) Wood Industry Co., Ltd.),
and JIANGSU LODGI WOOD INDUSTRY CO., LTD.,

Appellants,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee,

and

UNILIN BEHEER B.V., FLOORING INDUSTRIES, LTD.,
and UNILIN FLOORING N.C. LLC,

Intervenors.

E. Joshua Rosenkranz, Heller Ehrman LLP, of New York, New York, argued for appellants. With him on the brief were Sturgis M. Sobin and Alexander D. Chinoy, of Washington, DC, and Randy J. Kozel, of Madison, Wisconsin.

James A. Worth, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for appellee. With him on the brief were James M. Lyons, General Counsel, Wayne W. Herrington, Assistant General Counsel for Litigation, and Michael K. Haldenstein, Attorney.

John M. DiMatteo, Willkie Farr & Gallagher LLP, of New York, New York, argued for intervenors. With him on the brief were Steven H. Reisberg, Leslie M. Spencer, Alexander H. Swirnoff, and David A. Benner. Of counsel was Margaret D. Macdonald, Howrey LLP, of Washington, DC.

Appealed from: United States International Trade Commission

# United States Court of Appeals for the Federal Circuit

2007-1311

YINGBIN-NATURE (GUANGDONG) WOOD INDUSTRY CO., LTD.
(also known as Yingbin (Shunde-Foshan) Wood Industry Co., Ltd.),
and JIANGSU LODGI WOOD INDUSTRY CO., LTD.,

Appellants,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee.

and

UNILIN BEHEER B.V., FLOORING INDUSTRIES, LTD.,
and UNILIN FLOORING N.C. LLC,

Intervenors.

On appeal from the United States International Trade Commission in
Investigation No. 337-TA-545.

_____

DECIDED:  July 31, 2008

_____

Before MICHEL, <u>Chief Judge</u>, SCHALL and DYK, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Unilin Beheer B.V. Flooring Industries, Ltd. and Unilin Flooring N.C. LLC (collectively "Unilin") filed a complaint with the United States International Trade Commission ("the Commission") under section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337(a)(1)(B), alleging that thirty-two companies imported and sold laminate floor

panels which infringed certain claims of U.S. Patent Nos. 6,490,836 ("the '836 patent"), 6,874,292 ("the '292 patent"), and 6,928,779 ("the '779 patent"). Three of those companies originally were parties to this appeal: Power Dekor Group Co., Ltd. ("Power Dekor Group"), Yingbin-Nature Wood Industry Co., Ltd., and Jiangsu Lodgi Wood Industry Co., Ltd. (collectively "Power Dekor").[1]

The presiding administrative law judge ("ALJ") conducted an investigation into infringement and validity of the asserted claims. As relevant here, the ALJ concluded (1) that each of the Power Dekor products under investigation did not infringe claims 1 and 2 of the '836 patent or claims 3 and 4 of the '292 patent; and (2) that claims 5 and 17 of the '779 patent were invalid under 35 U.S.C. § 112 ¶ 1 for lack of written description support in the originally filed disclosure; and (3) that each of the Power Dekor products under investigation infringed one or more of claims 10, 18, and 23 of the '836 patent. In re Certain Laminated Floor Panels, Inv. No. 337-TA-545 (Int'l Trade Comm'n July 3, 2006) ("ALJ Determination"). The Commission reversed with respect to the first two issues, concluding (1) that Unilin had proven that Power Dekor's products infringed claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent; and (2) that claims 5 and 17 of the '779 patent satisfied the written description requirement and were therefore not invalid. In re Certain Laminated Floor Panels, Inv. No. 337-TA-545 (Int'l Trade Comm'n Jan. 5, 2007) ("Commission Opinion"). Based on these conclusions and the ALJ's finding that each of the Power Dekor products infringed one or more of claims 10, 18, and 23 of the '836 patent, which was not reviewed, the

---

[1] After oral argument, Power Dekor Group withdrew from the appeal. However, because the parties referred to appellants collectively as "Power Dekor" in their respective briefs and at oral argument, we do so here.

Commission determined that there was a violation of section 337 and issued a general exclusion order under 19 U.S.C. § 1337(d)(2). Because the Commission's conclusions are supported by substantial evidence, we affirm.

BACKGROUND

I.

Each of the patents at issue descends from U.S. Patent Application Serial No. 08/872,044 ("the '044 application"), which was filed on June 10, 1997, and ultimately issued as U.S. Patent No. 6,006,486 ("the '486 patent"). The '836 patent issued on December 10, 2002, from a continuation of the '044 application. The '292 and '779 patents issued on April 5, 2005, and August 16, 2005, respectively, from continuations of the application that resulted in the '836 patent.

The patents are directed at a mechanism for coupling adjacent panels of laminate flooring without requiring permanent attachment—i.e., without the use of adhesives and/or nails. The patents teach that the coupling mechanism is substantially in the form of an interlocking tongue and groove. See '836 patent Abstract; '292 patent Abstract; '779 patent Abstract. Figure 23, included in all three patents, illustrates an embodiment of the patented coupling mechanism.



Fig.23

An important feature of the invention is the extent to which the coupling mechanism counteracts the formation of gaps between adjacent floor panels. <u>E.g.</u>, '836 patent col.2 ll.34–41. To that end, the patents provide for a compression force component **K1** that draws adjacent floor panels toward each other. <u>E.g.</u>, <u>id.</u> col.10 ll.23–27. In one embodiment, a portion of the lower lip **43** of the groove is inclined at angle **A**. In the inclined portion, the lower lip of the groove contacts the tongue **9** along a common plane of tangency **L**. The tongue is shaped such that, upon insertion into the groove, the lower lip of the groove is displaced a small distance **V** from its original position. <u>E.g.</u>, <u>id.</u> col.10 ll.2–9. Further, the lower lip is described as having an "elastically yieldable or bendable portion," whereby the lower lip tends to return to its original position when displaced. <u>E.g.</u>, <u>id.</u> Thus, when the tongue and the groove are coupled together, the lower lip of the tongue exerts a force against the groove along the common plane of tangency **L**. The horizontal component of this force comprises the

compression force component **K1** that draws adjacent floor panels toward each other, counteracting the formation of gaps.

Another important aspect of the invention—as claimed in the '779 patent in particular—is the inclusion of voids, or "clearances," (e.g., the open spaces marked **81** in Figure 23) in certain locations between the tongue and groove of adjacent floor panels. According to the '779 patent, the voids ensure proper engagement between the tongue and the groove—e.g., by providing a space for stray dust or debris to collect during insertion of the tongue into the groove. E.g., '779 patent col.6 ll.15–20, col.7 ll.56–63.

## II.

On July 1, 2005, Unilin filed a complaint with the Commission under section 337, alleging that thirty respondents imported and sold laminated floor panels that infringed various claims of the '486 patent, the '836 patent, and the '292 patent. The Commission initiated its investigation on July 29, 2005. See In re Certain Laminated Floor Panels, 70 Fed. Reg. 44,694 (Int'l Trade Comm'n Aug. 3, 2005) (Notice of Investigation). Unilin later moved to terminate the investigation with respect to the '486 patent, Commission Opinion at 2, and added two respondents as well as claims of infringement with respect to the '779 patent, see In re Certain Laminated Floor Panels, 70 Fed. Reg. 61,309 (Int'l Trade Comm'n Oct. 21, 2005). Unilin also subsequently limited its assertions of infringement to claims 1, 2, 10, 18, and 23 of the '836 patent, claims 3 and 4 of the '292 patent, and claims 5 and 17 of the '779 patent. Commission Opinion at 2–3.

The ALJ conducted an evidentiary hearing on April 3–8 and April 10–11, 2006, and subsequently issued an exhaustive "Final Initial and Recommended Determination"

on July 3, 2006. <u>ALJ Determination</u>. As relevant here, the ALJ determined that numerous products of the 32 respondents, including all seven Power Dekor products under investigation, infringed one or more of claims 10, 18, and 23 of the '836 patent. <u>Id.</u> at 105–23. These claims are collectively termed the "snap action claims" because they require a "snap action" effect upon coupling, which the ALJ construed as "a physical action that takes place when an elastically bendable portion of one panel bends during coupling to allow the joint to come together and after coupling the bendable portion returns towards its original position when the locking elements are engaged." <u>Id.</u> at 59.

In addition, the ALJ construed the limitation of claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent (collectively "the lower lip claims") requiring an "elastically bendable portion" of the lower lip. The ALJ determined that claim 2 of the '836 patent and claim 3 of the '292 patent require elastic bending anywhere on the lower lip of the floor panel. <u>Id.</u> at 97, 99. The ALJ determined that claim 1 of the '836 patent and claim 4 of the '292 patent, however, require elastic bending limited to a specific location of the lower lip: between the deepest point of the groove and the lowermost bottom area of the recess (i.e., approximately between the areas labeled **78** and **73** in Figure 23). <u>Id.</u> at 51, 54–55. With respect to these latter two claims, the ALJ determined that bending cannot be shown in any area outside of the claimed location. <u>Id.</u>

Under this construction of the "elastically bendable portion" limitation, the ALJ determined that Power Dekor's products did not infringe the lower lip claims. Specifically, the ALJ concluded that Unilin had not met its burden of proving

infringement because the tests performed by Unilin's expert, Dr. Loferski, were unreliable. Id. at 95–103. Alternatively, even if Dr. Loferski's tests were deemed reliable, the ALJ stated that those tests would nevertheless be insufficient to prove infringement of claim 1 of the '836 patent and claim 4 of the '292 patent. Id. at 103–05. That was because Dr. Loferski simply measured the relative distance that the distal (or tip) end of the lower lip of each accused product was displaced during coupling—i.e., he recorded the measurement denoted with a "V" in Figure 23. Id. at 104. According to the ALJ, however, displacement at the distal end of the lower lip did not prove that the lower lip bent in the specific area required by claim 1 of the '836 patent and claim 4 of the '292 patent. Id. In so concluding, the ALJ rejected Unilin's theory that the lower lip of the accused products could be analyzed as a cantilever beam, which necessarily bends throughout its entire length. Id.

Also relevant here, the ALJ concluded that claims 5 and 17 of the '779 patent ("the clearance claims") were invalid because they failed the written description requirement of 35 U.S.C. § 112 ¶ 1. Id. at 27–37. Specifically, the ALJ determined that there was no written description support for the later-claimed concept of "clearances" in the originally-filed disclosure (the '044 application). The ALJ focused on certain amendments that were made to the originally-filed specification, wherein the applicant used the term "clearance" to describe various areas of the floor panels that had been previously referred to by three separate terms: (1) "recess," (2) "space" or "intermediate space," and (3) "chamber" or "dust chamber." Id. at 28–29. According to the ALJ, nothing in the originally-filed specification indicated that these three different spaces could be treated the same. Id. at 33. The ALJ determined that this all-encompassing

"clearance" concept constituted new matter, as did the applicant's re-labeling of certain figures to show clearance locations that were not previously identified. Id. at 34–35. Because the clearance claims were not supported by the originally-filed written description, the ALJ concluded that they were invalid under 35 U.S.C. § 112 ¶ 1. Id. at 36.

After receiving petitions for review from Unilin, several respondents, and the investigative attorney ("IA"), the Commission determined to review several of the ALJ's conclusions, including (1) the construction of claim 1 of the '836 patent and claim 4 of the '292 patent, (2) infringement of claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent, and (3) invalidity of the asserted claims of the '779 patent. See In re Certain Laminated Floor Panels, 71 Fed. Reg. 57,564, 57,565 (Int'l Trade Comm'n Sept. 29, 2006) (Notice of Commission Determination to Review Portions of a Final Initial Determination). The ALJ's findings with respect to infringement of the snap action claims were not reviewed by the Commission, and thus, those findings became part of the Commission's final determination. See 19 C.F.R. § 210.42(h).

The Commission concluded that the ALJ erred in construing claim 1 of the '836 patent and claim 4 of the '292 patent to require the absence of bending outside of the specified area of the lower lip—i.e., between the deepest point of the groove and the lowermost bottom area of the recess of the lower lip (approximately between the areas labeled **78** and **73** in Figure 23). Commission Opinion at 6. According to the Commission, "bending in the lower lip must occur in the elastically bendable portion but that bending is not prohibited elsewhere in the lower lip." Id.

The Commission also reversed the ALJ's determination that Power Dekor's products did not infringe the lower lip claims. The Commission addressed at length the ALJ's concerns regarding Dr. Loferski's test methodology, ultimately concluding that the tests he performed were reliable. Id. at 7–14. The Commission stated: "In sum, we find the evidence demonstrates that Loferski's test was a reasonable method for testing the presence of a bent lower lip, and while his test may not have been perfect, neither [Power Dekor] nor the ALJ identified any significant sources of error in the test." Id. at 14. The Commission also rejected the ALJ's independent ground of non-infringement with respect to claim 1 of the '836 patent and claim 4 of the '292 patent. In particular, the Commission determined—after receiving supplemental briefing on the issue—that it was appropriate to analyze the lower lip of the accused products according to cantilever beam principles. Id. at 14–17. Thus, the Commission concluded that Unilin had proven that the lower lip of each accused product bent elastically throughout its length, including in the specific area required by claim 1 of the '836 patent and claim 4 of the '292 patent. Id. at 17.

Next, the Commission reversed the ALJ's determination that the clearance claims were invalid for lack of written description. The Commission agreed with Unilin and the IA that the applicant merely introduced the term "clearance" as a generic term that encompassed areas that were—in the originally-filed disclosure—separately described as spaces, chambers, and recesses in the coupling joints of the panels. Id. at 23–24. The Commission relied on Schering Corp. v. Amgen Inc., 222 F.3d 1347 (Fed. Cir. 2000), for the proposition that "the use of a new term by the patentee to describe what was already disclosed does not constitute new matter," id. at 1352. According to

the Commission, the applicant's amendment to the application resulting in the '779 patent did not introduce new matter because it "did no more than label specific clearances and explain what was already shown in the specification and figures of the original application." Commission Opinion at 26. Thus, the Commission concluded that the originally-filed disclosure demonstrated that the applicant was in full possession of the subject matter of the clearance claims at the time that original disclosure was filed. The Commission determined that the clearance claims were not invalid under § 112 ¶ 1, finding that the respondents had not proven invalidity by clear and convincing evidence. Id.

Finally, after reaching the foregoing conclusions regarding infringement and validity, the Commission considered the appropriateness of entering a general exclusion order—as opposed to a limited exclusion order directed only at the particular respondents' products under investigation. Id. at 26; see 19 U.S.C. § 1337(d)(2). The Commission "agree[d] with the ALJ's recommendation of a general exclusion order based on the ALJ's findings of a 'widespread pattern' of unauthorized use of the patented invention and the 'business conditions' prongs of the test for whether a general exclusion order is warranted." Commission Opinion at 28–29. Accordingly, the Commission entered a general exclusion order with respect to claims 1, 2, 10, 18, and 23 of the '836 patent, claims 3 and 4 of the '292 patent, and claims 5 and 17 of the '779 patent.

## DISCUSSION

On appeal, Power Dekor challenges the Commission's determinations with respect to infringement of the lower lip claims and validity of the clearance claims.

Power Dekor argues that substantial evidence supports neither (1) the Commission's conclusion that Power Dekor's products infringed the lower lip claims nor (2) its conclusion that the clearance claims were adequately described in the originally-filed disclosure. Power Dekor does not appeal the determination that all seven of its products under investigation infringed one or more of the snap action claims. We will address the merits of Power Dekor's appeal. First, however, we address a threshold question.

I.

Prior to oral argument, we sent a letter to the parties requesting that they prepare responses to a question that had not been sufficiently addressed in their respective briefs: whether the issues raised by Power Dekor on appeal to this court were moot. Specifically, we asked "[w]hether this case is moot because the accused products at issue in this appeal all infringe at least one of claims 10, 18, and 23 of U.S. Patent No. 6,490,836, and the general exclusion order is supported by the infringement of those claims." "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). Where the controversy between the parties has ended, the case becomes moot and will be dismissed, "[h]owever convenient it might be to have decided the question" for future cases. United States v. Alaska S.S. Co., 253 U.S. 113, 116 (1920).

At oral argument, Unilin contended that the appeal is moot because the Commission determined that all seven[2] of Power Dekor's products infringed one or more of claims 10, 18, and 23 of the '836 patent ("the snap action claims"), and Power Dekor did not appeal that determination. In other words, Unilin argued that even if we agree with Power Dekor on the merits and reverse the Commission with respect to infringement of the lower lip claims and validity of the clearance claims, Power Dekor's products would still be excluded from the country based on the unappealed finding by the Commission that those products all infringed one or more of the snap action claims.

Power Dekor and the Commission argued that the appeal is not moot. That is because, according to Power Dekor, the controversy on appeal is not whether the seven Power Dekor products that were subject to investigation will be excluded from importation. Rather, Power Dekor contends that the controversy on appeal relates to the scope of the Commission's general exclusion order ("GEO"), which affects the type of products that Power Dekor will be permitted to import in the future. According to Power Dekor, it would like to import products that, under the Commission's rulings, do not infringe the snap action claims (claims 10, 18, and 23 of the '836 patent) but do infringe the lower lip claims (claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent) and the clearance claims (claims 5 and 17 of the '779 patent). See Oral Arg. at 1:54–3:18, available at http://www.cafc.uscourts.gov/oralarguments/mp3/2007-1311.mp3. As examples of such products, Power Dekor points specifically to the products of two other respondents that are not parties to this appeal: (1) the "Lock 7"

---

[2]    The Commission concluded that all seven of appellants' products subject to investigation infringed various claims of Unilin's patents: five products imported by Jiangsu Lodgi Wood Industry Co. and two products imported by Yingbin-Nature (Guangdong) Wood Industry Co. Ltd.

product of Vohringer Wood Product (Shanghai) Co. Ltd. and (2) the "Engagement 2" product of Yekalon Industry, Inc. According to Power Dekor, it desires to import such products in the future but, under the general exclusion order in its current form, it is prohibited from doing so. The Commission agreed with Power Dekor that the appeal is not moot because there is a live controversy about the scope of its general exclusion order.

## A.

When the Commission determines that there has been a violation of section 337, it may issue one of two types of exclusion orders: a limited exclusion order or a general exclusion order. See Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n, 474 F.3d 1281, 1286 (Fed. Cir. 2007). Both orders direct U.S. Customs and Border Protection ("Customs") to bar infringing products from entering the country. A limited exclusion order is "limited" in that it only applies to the specific parties before the Commission in the investigation. Id. In contrast, a general exclusion order bars the importation of infringing products by everyone, regardless of whether they were respondents in the Commission's investigation. Id. A general exclusion order may only be issued if (1) "necessary to prevent circumvention of a limited exclusion order," or (2) "there is a pattern of violation of this section and it is difficult to identify the source of infringing products." 19 U.S.C. § 1337(d)(2); see id.

Paragraph 1 of the general exclusion order issued by the Commission provides, in relevant part:

> Accordingly, the Commission hereby ORDERS that . . . [l]aminated floor panels covered by one or more of claims 1, 2, 10, 18, and 23 of the '836 patent, claims 3 and 4 of the '292 patent, and claims 5 and 17 of the '779 patent are excluded from entry into the United States . . . for the remaining

term of the listed patents, except under license of the patent owner or as provided by law.

The Commission's order is typical of general exclusion orders, speaking in terms of patent claims rather than parties and/or infringing products. It directs Customs to exclude from entry any laminated floor panels that infringe one or more of claims 1, 2, 10, 18, and 23 of the '836 patent, claims 3 and 4 of the '292 patent, and claims 5 and 17 of the '779 patent. As the Commission recognized, however, it would be difficult for Customs to independently test each floor panel presented for importation to determine whether it was covered by the GEO. Thus, at the recommendation of the ALJ and the IA, the Commission included a "certification provision" in the GEO. The certification provision reads as follows:

> Pursuant to procedures to be specified by [Customs], as [Customs] deems necessary, persons seeking to import laminated floor panels that are potentially subject to this Order shall certify that they are familiar with the terms of this Order, that they have made appropriate inquiry, and thereupon state that, to the best of their knowledge and belief, the products being imported are not excluded from entry under paragraph 1 of this Order. At its discretion, [Customs] may require persons who have provided the certification described in this paragraph to furnish such records or analyses as are necessary to substantiate the certification.

B.

First, we hold that Power Dekor's challenge to the validity of claims 5 and 17 of the '779 patent—the clearance claims—is not moot. The '836, '292, and '779 patents all issued from continuations of the original '044 application. Because the '836 and '292 patents were granted no term extension, they both expire on June 10, 2017—twenty years from the date the '044 application was filed. See 35 U.S.C. § 154(a)(2). The term of the '779 patent, however, was extended by 108 days pursuant to 35 U.S.C. § 154(b). Thus, the '779 patent will expire 108 days after June 10, 2017. As noted above, the

Commission determined that all seven Power Dekor products under investigation infringed at least one of claims 10, 18, and 23 of the '836 patent—a finding that Power Dekor has not appealed. However, the Commission also determined that all seven of those products infringed at least one of claims 5 and 17 of the '779 patent. Therefore, under the general exclusion order, Power Dekor is currently prohibited from importing any of those seven products until the '779 patent expires 108 days after June 10, 2017. A successful challenge to the validity of claims 5 and 17 of the '779 patent would enable Power Dekor to begin importation 108 days earlier, promptly upon expiration of the '836 patent on June 10, 2017. For at least that reason, the portion of Power Dekor's appeal concerning validity of the clearance claims is not moot.

For the following reasons, however, we hold that the portion of Power Dekor's appeal regarding infringement of claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent—the lower lip claims—is moot. As an initial matter, it is clear that the live controversy on appeal cannot be the exclusion of the seven Power Dekor products under investigation from entry into the United States. That exclusion is fully supported by the Commission's determination that each of the seven products infringes at least one of claims 10, 18, and 23 of the '836 patent—the snap action claims—which was not appealed. In other words, any injury caused by the exclusion of those seven products would not be redressed by our determination, if appropriate, that the products do not infringe claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent.

Power Dekor concedes that the exclusion of its seven products from importation is not redressable by this court. Instead, it argues that the controversy on appeal relates to the scope of the Commission's general exclusion order—i.e., the inclusion of

claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent in the GEO. The only injury to which Power Dekor points as resulting from the Commission's inclusion of the lower lip claims in the GEO is that it is prevented from importing products that do not infringe the snap action claims but that do infringe one or more of the lower lip claims. Of course, the fact that Power Dekor has no legal right to import products that infringe one or more of the lower lip claims is true regardless of whether those claims are listed in any general exclusion order. See 19 U.S.C. § 1337(a)(1)(B). Until the '836 and '292 patents expire, Power Dekor is not permitted to import products that actually infringe one or more of the lower lip claims, unless those claims are otherwise held invalid or unenforceable. The true nature of the injury that Power Dekor asserts lies in the potential collateral estoppel effect of the GEO—coupled with the Commission's conclusions regarding infringement of the products under investigation—upon a determination, in future proceedings, of whether there is infringement by similar products that Power Dekor presents for importation.

Power Dekor essentially argues that it will be precluded from importing products similar to Vohringer's "Lock 7" product and Yekalon's "Engagement 2" product because (1) the Commission's general exclusion order instructs Customs to exclude from entry any product that infringes one or more of the lower lip claims and (2) the Commission held that the "Lock 7" and "Engagement 2" products infringe one or more of those claims. Power Dekor contends that, if it is not permitted to seek resolution of the infringement issue in the present appeal, it will forever be barred from importing such products. Stated differently, the injury articulated by Power Dekor is that it will be collaterally estopped by the Commission's present rulings from arguing in future

proceedings, whether before Customs or the Commission, that products similar to the "Lock 7" and "Engagement 2" products do not infringe the lower lip claims. We do not agree, however, that Power Dekor is injured by collateral estoppel.

The factual findings of infringement that were adverse to the other parties (Vohringer and Yekalon) in this investigation will not bind Power Dekor in future proceedings. See Comair Rotron, Inc. v. Nippon Densan Corp., 49 F.3d 1535, 1537 (Fed. Cir. 1995) (noting that, in order for collateral estoppel to apply, "the party against whom estoppel is sought [must have] had a full and fair opportunity to litigate the issue" in the prior action). The Commission's factual findings that the "Lock 7" and "Engagement 2" products infringe the lower lip claims are only preclusive as to Vohringer and Yekalon, respectively.

In addition, we do not think that, under the circumstances, the Commission's determinations of infringement with respect to the seven Power Dekor products under investigation should have preclusive effect against other products presented by Power Dekor for importation at a future date—e.g., if Power Dekor attempts to design around the unappealed infringement by those seven products of the snap action claims. First, we note that proof of infringement by collateral estoppel is only appropriate in limited circumstances, where it is shown that a close identity exists between the relevant features of the accused device and the device previously determined to be infringing. See Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1324 (Fed. Cir. 2008) (noting that claim preclusion does not apply with respect to infringement unless the accused device and the device previously held infringing are "essentially the same," meaning that the differences between them are merely "colorable" or "unrelated to the limitations in the

claim of the patent" (citations omitted)); see also Del Mar Avionics, Inc., v. Quinton Instrument Co., 836 F.2d 1320, 1324 (Fed. Cir. 1987) (holding that claim preclusion did not apply because a "device not previously before the court, and shown to differ from those structures previously litigated, requires a determination on its own facts"); Young Engineers, Inc. v. Int'l Trade Comm'n, 721 F.2d 1305, 1316 (Fed. Cir. 1983) (refusing to find noninfringement by way of collateral estoppel, where the accused infringer made no attempt to establish that the device in question was the same as the device previously held noninfringing).

Here, infringement of the unappealed snap action claims appears related, in part, to infringement of the lower lip claims. For example, the ALJ interpreted the snap action claims as requiring "a physical action that takes place when an elastically bendable portion of one panel bends during coupling to allow the joint to come together and after coupling the bendable portion returns towards its original position when the locking elements are engaged." ALJ Determination at 59 (emphases added). In other words, it is the "elastically bendable" property of the lower lip of the accused products that contributes to the claimed "snap action" coupling effect. Power Dekor apparently proposes to avoid infringement of the snap action claims by altering the tongue-and-groove structure of its future products, such that those products are coupled by rotational assembly—like the "Lock 7" and "Engagement 2" products—rather than assembly via the "snap action" that occurs when two panels are laterally shifted toward each other.[3] There has been no showing that collateral estoppel will apply to Power

---

[3] Compare the rotational assembly method depicted in Figures 3 and 4 of the '836 patent, see '836 patent col.5 ll.52–56 ("In the form of embodiment of FIGS. 2 to 4, . . . two floor panels [are] mutually engaged by means of a turning movement, without

Dekor's future products in view of these structural changes—i.e., that Power Dekor's future products will be "essentially the same" as those previously determined by the Commission to infringe the lower lip claims.

Finally, the prospect of collateral estoppel seems especially diminished where, as here, proof of infringement requires more than a passing observation of the accused device's structure. Claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent require that the lower lip of an accused floor panel have an "elastically bendable portion," the proof of which presumably requires significant expert testing. Indeed, all of Power Dekor's arguments here with respect to infringement center on the propriety of Dr. Loferski's method of testing the lower lip of each of its products for an "elastically bendable portion."

In sum, we conclude that the Commission's findings with respect to infringement of the lower lip claims can give Power Dekor "no reasonable concern about preclusive effect." Sea-Land Serv., Inc. v. Dep't of Transp., 137 F.3d 640, 649 (D.C. Cir. 1998). There is simply no reason why Power Dekor, at a future date, will be positioned differently vis-à-vis any other foreign company when presenting laminate floor panels for importation. Panels that infringe one or more of the claims included in the GEO will be excluded; those that do not infringe will be allowed entry into the United States. The Commission's findings of infringement with respect to the lower lip claims in this investigation will have no preclusive effect on Power Dekor in future import

---

the occurrence of any snap-together effect."), with the "snap action" assembly method depicted in Figures 6 and 7, see id. col.7 ll.1–6 ("The locking elements [depicted in Figures 6 and 7] . . . can easily be pushed over each other until they grip behind each other by means of a snap-together effect . . . .").

proceedings.[4]  Therefore, we conclude that Power Dekor has failed to allege an actual injury caused by the inclusion of those claims in the GEO, and we decline to address Power Dekor's arguments relating to infringement.

II.

Finally, we address Power Dekor's contentions that the clearance claims are invalid for lack of adequate written description in the originally-filed disclosure.  The first paragraph of Section 112 of the Patent Act provides, in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

35 U.S.C. § 112 ¶ 1.  "We have interpreted that section as requiring a 'written description' of an invention separate from enablement."  Enzo Biochem, Inc. v. Gen-

---

[4]    The Commission's determination with respect to Power Dekor's infringement of the lower lip claims will have no effect in future import proceedings concerning Power Dekor.  When a Court of Appeals decides a case without reaching a particular issue, the resolution of that issue by the trial court does not give rise to collateral estoppel.  See, e.g., Salovaara v. Eckert, 222 F.3d 19, 33–34 n.10 (2d Cir. 2000) (denying application of collateral estoppel because "it cannot be said that 'the issue in question was actually and necessarily decided' in the prior appeal." (quoting Hachamovitch v. DeBuono, 159 F.3d 687, 695 (2d Cir. 1998))); Hicks v. Quaker Oats Co., 662 F.2d 1158, 1168 (5th Cir. 1981) ("[T]he general rule is that if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court."); see also 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 (2d ed. 2002) ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision."); Restatement (Second) of Judgments § 27 cmt.o (1982) ("If the judgment of the court of first instance was based on a determination of two issues . . . [and] the appellate court upholds one of these determinations as sufficient and refuses to consider [the second,]" there is no preclusive effect as to the second issue.).  Of course, that is not a reason to hold infringement of the lower lip claims unappealable, but it certainly is a result of our holding.

Probe Inc., 323 F.3d 956 (Fed. Cir. 2002) (citing Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).

"In order to satisfy the written description requirement, the disclosure as originally filed does not have to provide in haec verba support for the claimed subject matter at issue." Purdue Pharma L.P. v. Faulding Inc., 230 F.3d 1320, 1323 (Fed. Cir. 2000) (citing Fujikawa v. Wattanasin, 93 F.3d 1559, 1570 (Fed. Cir. 1996)). Nonetheless, "the disclosure of the prior application must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention.'" PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991)); see also id. That inquiry is a factual one and must be assessed on a case-by-case basis. Purdue Pharma, 230 F.3d at 1323.

We review the Commission's factual findings under the substantial evidence standard. 19 U.S.C. § 1337(c); 5 U.S.C. § 706(2)(E). Thus, we review for substantial evidence the Commission's determination that claims 5 and 17 of the '779 patent satisfy the written description requirement of 35 U.S.C. § 112 ¶ 1. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d 1376, 1381 (Fed. Cir. 1998) (quoting Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla," Consol. Edison, 305 U.S. at 229, but "something less than the weight of the evidence," Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619–20 (1966). Importantly, "the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Id. at 620 (citation omitted).

Power Dekor argues on appeal that the Commission's decision regarding validity is not supported by substantial evidence. According to Power Dekor, the disclosure of the original '044 application does not convey with reasonable clarity to those skilled in the art that the inventor possessed the invention—i.e., the concept of clearances—later claimed in claims 5 and 17 of the '779 patent. Power Dekor contends that the later-claimed concept of "clearances" was not discussed in the original specification; rather, it was introduced as new matter in the application leading to the '779 patent through alterations to fourteen paragraphs, the introduction of new reference numbers in certain figures, and the addition of two completely new paragraphs.

Power Dekor contends that the Commission was incorrect in concluding that the patentee merely introduced the word "clearances" as a generic term that encompasses (1) the "recesses," (2) the "chambers/dust chambers," and (3) the "spaces/intermediate spaces" that were disclosed in the original disclosure. Power Dekor argues that those three terms were used in the original disclosure to describe three different types of spaces, and that nothing in the original disclosure indicates to one of ordinary skill that "recesses," "chambers/dust chambers," and "spaces/intermediate spaces" can be treated the same. Indeed, Power Dekor notes, the original disclosure provides that "chambers/dust chambers" and "spaces/intermediate spaces" are internal voids that are formed when two panels are coupled together, whereas it only describes certain areas of uncoupled panels as "recesses." According to Power Dekor, this inconsistency is manifested in the conflicting ways that the term "clearance" is used in the claims of the

'779 patent, wherein "clearance" is used in claim 1 to refer to the internal void between to adjacent panels but in claim 13 to refer to an edge that <u>defines</u> the internal void upon coupling of two adjacent panels.

Finally, Power Dekor argues that claims 5 and 17 of the '779 patent do not simply require the general presence of one or more "clearances." Rather, they require a specific combination of clearances in specific locations between adjacent floor panels. According to Power Dekor, the original disclosure does not describe the importance of including clearances in the specific combinations claimed in claims 5 and 17 of the '779 patent. In support of this argument, Power Dekor cites our decision in <u>Purdue Pharma</u>. The claims at issue there were directed at a method of treating pain by orally administering a sustained-release dosage of an opioid analgesic on a once-a-day basis, wherein the maximum plasma concentration ($C_{max}$) achieved was more than twice the plasma level of the opioid at approximately 24 hours after administration ($C_{24}$). <u>Purdue Pharma</u>, 230 F.3d at 1322–23. We acknowledged that certain examples in the original specification "provide[d] date from which one can piece together the [later-claimed] $C_{max}/C_{24}$ ratio." <u>Id.</u> at 1326. However, we determined that the ratio was not supported by the original specification because "neither the text accompanying the examples, nor the data, nor anything else in the specification in any way emphasizes the $C_{max}/C_{24}$ ratio," and thus, we concluded that "one of ordinary skill in the art would not be directed to the $C_{max}/C_{24}$ ratio as an aspect of the invention." <u>Id.</u> Power Dekor argues that, as in <u>Purdue Pharma</u>, it is not enough here for the original disclosure to simply show internal voids existing in various figures. It must have made clear that the inventor was in possession of the specifically claimed combination of those voids, which it did not.

The Commission and Unilin respond that the Commission's conclusion regarding validity of the clearance claims is supported by substantial evidence. They argue that the '779 patent's claims cover the very internal voids that were shown and described in the original disclosure. In addition, they contend that merely adding the generic word "clearance" to describe those spaces did not constitute new matter. Finally, Unilin and the Commission argue that there is nothing improper about using the term "clearance" in two different ways within the '779 patent—in one way to describe the "recess" of an uncoupled panel and in another to describe different voids formed between two coupled panels.

We agree with the Commission and Unilin that the Commission's conclusion regarding validity of the clearance claims is supported by substantial evidence. The internal voids recited in claims 5 and 17 of the '779 patent are all shown and described in the disclosure accompanying the original '044 application. Claim 5 requires a "plurality of separate clearances adjacent at least a portion of said outer peripheral portion of said tongue between said groove and said tongue." The ALJ's interpretation of the term "clearance" in claim 5—not contested here—was "an open space between two coupled panels, one panel containing a tongue, and one panel containing a groove, that is not created by normal machining tolerances." <u>ALJ Determination</u> at 72. Such "open spaces" are depicted in at least Figures 7 and 23 of the original disclosure. The spaces were originally described as "dust chambers **81**," '486 patent col.11 l.66–col.12 l.4, whereas the '779 patent application was amended to refer to the spaces as "dust chambers <u>or clearances</u> **81**," '779 patent col.12 ll.40–46 (addition emphasized). In both cases, the spaces were described as having "the advantage that inclusions which get

between the floor panels . . . during the engagement do not exert an adverse influence upon good engagement." '779 patent col.12 ll.40–46; '486 patent col.11 l.66–col.12 l.4.

As noted by the ALJ, the term "clearance" is used somewhat differently in claim 17 of the '779 patent, referring not to a chamber itself but to an area of an uncoupled panel that defines a chamber upon coupling. Claim 17 of the '779 patent requires a "first clearance below said upper side of said panel and defining an upper lip contact surface adjacent said clearance, said first clearance defining an upper chamber below said upper side and above said tongue upon coupling of cooperating coupling parts." The ALJ's interpretation of the term "clearance" in claim 17—also not contested here— was "an indentation, of either the tongue panel or groove panel of an uncoupled joint, that is not created through normal machining tolerances." ALJ Determination at 72. Said "indentation" is shown and labeled in the figures of the original disclosure representing uncoupled floor panels—e.g., Figures 2 and 5. The original disclosure referred to the indentation of Figure 2 as a "recess **25**," '486 patent col.6 ll.30–35, whereas the '779 patent application was amended to refer to the same indentation as a "recess or clearance **25**," '779 patent col.6 ll.34–39 (addition emphasized). The description accompanying the indentation of Figure 5 was similarly amended from "recess" in the original disclosure, '486 patent col.7 ll.10–11, to "recess or clearance" in the '779 patent, '779 patent col.7 ll.19–21. Figure 2, with recess **25**, is shown below:



Fig.2

Likewise, the upper chamber defined by the first clearance of claim 17 is shown and described in the original disclosure. The upper chamber is clearly shown in all of the original figures depicting coupled floor panels—i.e., Figures 4, 7, 8, 9, 10, and 23. Figure 4, included below, shows the upper chamber as the upper most open space between the adjacent floor panels. The upper chamber is also marked **81** on Figure 23 of the '779 patent above.



Fig.4

In addition to an upper chamber defined by a first clearance, claim 17 requires "at least one second chamber being defined between the tongue and groove in the area along the tongue periphery between the respective upper tongue contact surface and the lower tongue contact surface when adjacent panels are coupled."  The location of the "second chamber" recited in claim 17 is essentially the same as the location of the "plurality of separate clearances" recited in claim 5 (see, e.g., the middle open spaces marked **81** in Figure 23 above).  Thus, in addition to an upper chamber defined by a first clearance, claim 17 requires at least one of the spaces recited in claim 5.

In light of the foregoing, we cannot say that the Commission's conclusion regarding the validity of claims 5 and 17 is unsupported by substantial evidence.  That is, substantial evidence supports the Commission's determination that those claims were adequately described in the originally-filed disclosure.  Like the Commission, we do not think that the patentee's various amendments to the specification—e.g., the introduction of the generic term "clearance" and addition of labels to certain figures—in prosecuting the '779 patent were of such significance as to demonstrate a prior lack of possession with respect to the subject matter claimed in claims 5 and 17.

Nor do we think that the patentee's attribution of two related meanings to the term "clearance" is problematic.  It is the later-<u>claimed</u> subject matter that must be supported by adequate written description in the originally-filed disclosure.  See <u>Vas-Cath</u>, 935 F.2d at 1564 ("The invention is, for purposes of the 'written description' inquiry, whatever is now claimed.").  Here, there is no dispute with respect to the subject matter that is claimed in claims 5 and 17.  Although Power Dekor refers to the patentee's use of the term "clearance" as "inconsistent," it does not argue that either

claim 5 or claim 17 is indefinite. Indeed, the ALJ had no trouble correctly distinguishing, in context, between the patentee's use of the term "clearance" in claim 5 to describe an internal void in coupled panels, and in claim 17 to describe the indentation of an uncoupled panel that defines an internal void upon coupling. See ALJ Determination at 72; see also Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1311 (Fed. Cir. 1999) (finding it appropriate, in the context of the patent at issue, to construe the same term to have two different meanings).

Finally, we are not persuaded to reverse the Commission's finding of validity by Power Dekor's citation to Purdue Pharma. That case was an appeal from a bench trial, wherein the district court held that the claims at issue were invalid for lack of adequate written description under § 112 ¶ 1. Thus, the question we considered was whether the district court clearly erred in concluding that the claims at issue lacked adequate written description. Purdue Pharma, 230 F.3d at 1323–24. Under the clear error standard, a court's findings will not be overturned in the absence of a "definite and firm conviction" that a mistake has been made. Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1359 (Fed. Cir. 2003) (citation omitted). We ultimately held that the district court's conclusion was not clearly erroneous. Purdue Pharma, 230 F.3d at 1323–24. Here, we review for substantial evidence the Commission's conclusion that the clearance claims were not invalid for lack of adequate written description. Moreover, the later-filed claims in Purdue Pharma were directed at a specific numerical relationship between two variables ($C_{max}/C_{24} > 2$). However, there was nothing in the disclosure suggesting that the $C_{max}/C_{24}$ ratio itself—regardless of the specifically claimed range of values for that ratio—was an important feature of the invention. Id. at 1326–27. Indeed, we found that

the disclosure did not even motivate one to calculate $C_{max}/C_{24}$. Id. at 1327. Here, the importance of the later-claimed chambers was clearly described in the originally-filed disclosure. See '486 patent col.6 ll. 14–17, col.7 ll.46–49, col.11 l.66–col.12 l.4. We are not persuaded by Purdue Pharma that the Commission's decision regarding validity of the clearance claims in this case is unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we affirm the Commission's determination that claims 5 and 17 of the '779 patent are valid. We decline to reach as moot the Commission's determinations with respect to infringement of claims 1 and 2 of the '836 patent and claims 3 and 4 of the '292 patent.

## AFFIRMED

## COSTS

No costs.