# United States Court of Appeals for the Federal Circuit

_____

**CROCS, INC.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

_____

2024-1300

_____

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1270.

_____

Decided: January 8, 2026

_____

DAVID A. CAINE, Arnold & Porter Kaye Scholer LLP, Palo Alto, CA, argued for appellant. Also represented by MICHAEL BERTA, SEAN MICHAEL CALLAGY, ISAAC RAMSEY, San Francisco, CA; MARK SAMARTINO, Chicago, IL; ANDREW TUTT, Washington, DC.

CARL PAUL BRETSCHER, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by AMANDA PITCHER FISHEROW, HOUDA MORAD.

_____

Before LOURIE and STOLL, *Circuit Judges*, and CHUN, *District Judge*.[1]

STOLL, *Circuit Judge*.

Crocs, Inc. appeals the United States International Trade Commission's finding of no violation of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, by the respondents who participated in an evidentiary hearing:  Orly Shoe Corp.; Hobby Lobby Stores, Inc.; and Quanzhou ZhengDe Network Corp., d/b/a Amoji (collectively, the "Active Respondents").  Because Crocs's appeal of the Commission's no violation finding as to the Active Respondents is untimely, we dismiss in part.

Crocs also appeals the Commission's entry of a limited exclusion order against the respondents the Commission found to be in default:  Jinjiang Anao Footwear Co., Ltd.; Huizhou Xinshunzu Shoes Co., Ltd.; Star Bay Group, Inc.; and La Modish Boutique (collectively, the "Defaulting Respondents").  Because the Commission did not abuse its discretion in entering a limited exclusion order under 19 U.S.C. § 1337(g)(1) against the Defaulting Respondents, we affirm in part.

## BACKGROUND

Crocs owns U.S. Trademark Nos. 5,149,328 and 5,273,875 (collectively, the "3D Marks"), which cover certain features of Crocs's Classic Clog shoes.  In June 2021, Crocs filed a complaint with the Commission, which it later amended, accusing multiple respondents of violating Section 337 by importing, selling for importation, or selling in the United States after importation certain casual footwear that infringed or diluted Crocs's 3D Marks.

---

[1]    Honorable John H. Chun, District Judge, United States District Court for the Western District of Washington, sitting by designation.

Crocs's complaint requested relief in the form of a general exclusion order (GEO), or in the alterative, a limited exclusion order (LEO). In July 2021, the Commission instituted an Investigation based on Crocs's complaint. Prior to the evidentiary hearing in the Investigation, the Commission found the four Defaulting Respondents "were in default and waived their rights to appear, to be served with documents, and to contest the allegations in this investigation." J.A. 14. The three Active Respondents participated in an evidentiary hearing before an Administrative Law Judge in September 2022.[2]

In January 2023, the Administrative Law Judge issued an Initial Determination finding no violation of Section 337 because, among other reasons, (1) Crocs failed to prove that any of the respondents infringed the 3D Marks; (2) Crocs failed to prove that any of the respondents diluted the 3D Marks by blurring or tarnishment; and (3) Crocs waived its infringement contentions against the Defaulting Respondents. In April 2023, the Commission determined to review in part the Initial Determination, including the Administrative Law Judge's findings on likelihood of confusion and dilution of the 3D Marks and whether Crocs waived its infringement contentions against the Defaulting Respondents.

On September 14, 2023, the Commission issued its Notice of Final Determination and corresponding Commission Opinion finding no violation of Section 337 by the Active Respondents because Crocs failed to prove likelihood of confusion, infringement, or dilution of the 3D Marks as to those respondents. For the Defaulting Respondents, the Commission "determined to set aside the [Initial Determination]'s findings with respect to waiver as they do not

---

[2] Throughout the Investigation, more than twenty other respondents were also terminated based on settlement agreements or consent orders.

apply to issuance of an LEO or [cease and desist order (CDO)] against a party found in default, pursuant to 19 U.S.C. § 1337(g)(1)." J.A. 44. The Commission noted that "Section 337(g)(1) states that, once a party is found in default, 'the Commission *shall* presume the facts alleged in the complaint to be true and *shall, upon request, issue* an exclusion from entry [*i.e.*, LEO] or a cease and desist order, or both, limited to that person,' unless the Commission finds the public interest factors weigh against exclusion." J.A. 45 (alteration in original) (quoting 19 U.S.C. § 1337(g)(1)). The Commission reasoned that there was "thus no need [for Crocs] to present infringement contentions with respect to [the Defaulting R]espondents in Crocs's prehearing brief to obtain relief limited to them under [S]ection 337(g)(1)." *Id.* As the Commission found the public interest factors did not preclude relief in this case, it issued an LEO against the Defaulting Respondents.

On December 22, 2023, Crocs filed a notice of appeal. *See* ECF No. 1.

## DISCUSSION

On appeal, Crocs challenges (1) the Commission's no violation finding as to the Active Respondents, and (2) the Commission's decision to only enter an LEO against the Defaulting Respondents instead of entering a GEO, as Crocs requested. The Commission responds that (1) Crocs's appeal against the Active Respondents is time-barred by Section 337(c), and (2) the Commission did not abuse its discretion in issuing only an LEO against the Defaulting Respondents. We take each issue in turn.

## I

According to Crocs, its appeal is timely because the "Commission issued its one and only final determination in the Investigation below on September 14, 2023," which "triggered a 60-day Presidential review period, rendering the determination non-final . . . until November 14, 2023."

Appellant's Br. 83.  Thus, Crocs argues, the 60-day appeal window set in Section 337(c) did not start to run until November 14, 2023, rendering its December 22, 2023 notice of appeal timely as to the Active Respondents.  We disagree.

The language of Section 337 and our case law support dismissing Crocs's appeal as to the Active Respondents.  Our jurisdiction to hear appeals from the Commission is governed by 28 U.S.C. § 1295(a)(6): "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade[] made under [S]ection 337."  Section 337(c) states in part that:

> *Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5.*  Notwithstanding the foregoing provisions of this subsection, Commission determinations under subsections (d), (e), (f), and (g) with respect to its findings on the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the amount and nature of bond, or the appropriate remedy shall be reviewable in accordance with section 706 of title 5.  Determinations by the Commission under subsections (e), (f), and (j) with respect to forfeiture of bonds and under subsection (h) with respect to the imposition of sanctions for abuse of discovery or abuse of process shall also be reviewable in accordance with section 706 of title 5.

19 U.S.C. § 1337(c) (emphasis added). Prior to a Commission finding of *a violation* becoming final, however, there is a 60-day presidential review period:

> (1) If the Commission determines that *there is a violation* of this section, . . . it shall—
>
> . . .
>
> (B) transmit to the President a copy of such determination and the action taken under subsection (d), (e), (f), (g), or (i), with respect thereto, together with the record upon which such determination is based.
>
> . . .
>
> (4) If the President does not disapprove such determination within such 60-day period, or if he notifies the Commission before the close of such period that he approves such determination, then, for purposes of paragraph (3) and subsection (c) such determination shall become final on the day after the close of such period or the day on which the President notifies the Commission of his approval, as the case may be.

19 U.S.C. § 1337(j) (emphasis added).

In *Allied Corp. v. United States International Trade Commission*, 782 F.2d 982 (Fed. Cir. 1986), two orders issued from the Commission: (1) a July 6, 1984 order adopting an Administrative Law Judge's determination that two of Allied's patents were invalid, which was not subject to a presidential review period, and (2) an October 15, 1984 order excluding articles that infringed Allied's valid patent, which was subject to a 60-day presidential review period. *See* 782 F.2d at 983. Allied filed its notice of appeal on February 13, 1985, which was within the 60-day appeal window that started after the presidential review period for the second order was complete. However, our court

dismissed Allied's appeal as untimely. Because "Allied prevailed in respect [to the valid] patent and the exclusion order, it could not appeal from that order." *Id.* This left only the July 6, 1984 order invalidating two of Allied's patents, which "was final as of July 6, 1984, there being no provision for Presidential review, or for other administrative proceedings" relevant to that order. *Id.* at 984. But Allied's notice of appeal was filed more than 60 days after July 6, 1984. Allied tried to argue "that a § 337(c) proceeding is a single entity and [thus] it was waiting for expiration of the Presidential review period" on the entire investigation to end before it appealed. *Id.* We held that this argument was "without merit." *Id.*

In *Broadcom Corp. v. International Trade Commission*, 542 F.3d 894 (Fed. Cir. 2008), the Commission found no violation on two patents, after which Broadcom filed the named appeal; however, the Commission had also issued an exclusion order barring the importation of Qualcomm's accused products based on infringement of a different patent, which Qualcomm appealed as part of a different case before our court after the presidential review period for the exclusion order was complete. *See* 542 F.3d at 896. Qualcomm then tried to have Broadcom's appeal dismissed as premature because, "[i]n Qualcomm's view, the Commission's order did not become final and appealable until after the President declined review of the Commission's exclusion order based on the [infringed] patent." *Id.* We relied on *Allied* to hold that "once the Commission adopted the administrative law judge's noninfringement determination, there was no further opportunity for review of that decision other than by way of review in this court. Broadcom therefore did not prematurely file its petition for review once the Commission issued its order." *Id.* at 896–97.

Thus, our case law instructs that in investigations that have a mixed result of a violation finding (subject to a presidential review period prior to the 60-day appeal window starting) and a no-violation finding (not subject to a

presidential review period and so final for the purposes of starting the 60-day appeal window at the time it issues), the notices of appeal for the different findings have distinct appeal windows. Here, as to the Active Respondents, when the Commission's determination of no violation was entered there was no presidential review period and no other administrative proceedings for that finding (unlike for the entry of an exclusion order against the Defaulting Respondents). Thus, the no violation finding was a final decision of the Commission on the day it issued and the 60-day period in Section 337(c) to file a notice of appeal began to run. That 60-day period ended on November 13, 2023, but Crocs did not file its notice of appeal until December 22, 2023.

Crocs argues that, because the Commission chose to issue both its decision of no violation against the Active Respondents and its decision to issue an exclusion order against the Defaulting Respondents in the same writing—i.e., the Commission issued only one Notice of Final Determination and Commission Opinion—then we must treat it as a single final determination that cannot be parsed for the purposes of presidential review, and thus also cannot be parsed for the appeal window. But Crocs does not point to any case law from this court that supports this argument. While Crocs seeks to analogize this case to *Young Engineers, Inc. v. United States International Trade Commission*, 721 F.2d 1305 (Fed. Cir. 1983), *Young Engineers* does not stand for a different proposition from what we describe above for investigations with mixed violation results. Indeed, *Young Engineers* has no bearing on these types of investigations, as it did not include a no violation finding. Instead, *Young Engineers* dealt with finality issues arising from when the President, during the presidential review period, disapproved in part of the relief the Commission granted and remanded the entire remedy back to the Commission to modify the exclusion orders entered

against respondents. *See Young Engineers*, 721 F.2d at 1308–09.

Moreover, even Crocs seems to concede that if the Commission had issued two different writings—even if those orders came out on the same day—then under our court's precedent the time period to file a notice of appeal would be different for the two sets of respondents. *See* Appellant's Reply Br. 36 ("In future investigations, the Commission can ensure that affected parties are able to appeal adverse decisions quickly by issuing two final determinations, one containing the adverse findings and conclusions and the other containing the favorable findings and conclusions as well as the remedies."). But this merely elevates form over substance.

Crocs also summarily argues without explication that *Harrow v. Department of Defense*, 601 U.S. 480 (2024), applies to Section 337(c) and, thus, the deadlines in 19 U.S.C. § 1337(c) are not jurisdictional. *See* Appellant's Br. 82. We need not decide this issue or whether equitable tolling could apply to this case because, even assuming that the 60-day period in Section 337(c) is not jurisdictional and one could equitably toll this statute, Crocs forfeited its right to argue it was entitled to such equitable tolling here. Despite citing *Harrow* to argue that the statute was not jurisdictional, Crocs failed to include any argument or evidence on tolling in its opening brief. *See* Appellant's Br. 82–83; *see also SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

\* \* \*

We thus hold that *Allied* and *Broadcom* are controlling where the Commission issues one writing that contains both a no violation finding against one set of respondents and enters an exclusion order against another set of respondents. Accordingly, there will be different deadlines

to file an appeal for such decisions. Here, the no violation finding against the Active Respondents was final as of the day it issued because it was not subject to presidential review or any other administrative proceedings, and so the 60-day period to file a notice of appeal began to run on September 14, 2023. Thus, the notice of appeal for the Commission's final decision of no violation by the Active Respondents was due by November 13, 2023, but Crocs did not file its notice of appeal until December 22, 2023. Crocs's appeal of the no violation finding is thus dismissed as untimely.

## II

Turning to Crocs's request for a GEO instead of an LEO based on the Commission's entry of a violation against the Defaulting Respondents,[3] Crocs argues that the Commission offered "no explanation for its finding and provided no reasoning to justify its conclusion" that Crocs was not entitled to a GEO. Appellant's Br. 23. We disagree.

"[T]he Commission has broad discretion in selecting the form, scope and extent of the remedy, and judicial review of its choice of remedy necessarily is limited." *Viscofan, S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544, 548 (Fed. Cir. 1986). "Stated another way, because the Commission is 'the expert body to determine what remedy is necessary,' it has 'wide latitude for judgment and the courts will not interfere except where the remedy selected

---

[3] "A limited exclusion order is 'limited' in that it only applies to the specific parties before the Commission in the investigation. In contrast, a general exclusion order bars the importation of infringing products by everyone, regardless of whether they were respondents in the Commission's investigation." *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1330 (Fed. Cir. 2008) (citation omitted).

has no reasonable relation to the unlawful practices found to exist.'" *Philip Morris Prods. S.A. v. Int'l Trade Comm'n*, 63 F.4th 1328, 1339–40 (Fed. Cir. 2023) (quoting *Viscofan*, 787 F.2d at 548). "This court therefore must affirm the Commission's choice of remedy unless the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 1340 (quoting *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1358 (Fed. Cir. 2010)).

In setting aside the Administrative Law Judge's no violation finding for the Defaulting Respondents based on waiver, the Commission explained that such waiver would "not apply to issuance of an LEO or CDO against a party found in default, pursuant to 19 U.S.C. § 1337(g)(1)." J.A. 44. Instead, under Section 337(g)(1), the Commission clarified that it was to assume the facts alleged in Crocs's complaint against the Defaulting Respondents were true and it "*shall . . . issue* an exclusion from entry." J.A. 45. Thus, the Commission described that it was only issuing an exclusion order against the Defaulting Respondents based on Section 337(g)(1). Section 337(g)(1) states:

> (1) If—
>
> (A) a complaint is filed against a person under this section;
>
> (B) the complaint and a notice of investigation are served on the person;
>
> (C) the person fails to respond to the complaint and notice or otherwise fails to appear to answer the complaint and notice;
>
> (D) the person fails to show good cause why the person should not be found in default; and
>
> (E) the complainant seeks relief limited solely to that person;

> the Commission shall presume the facts alleged in the complaint to be true and shall, upon request, *issue an exclusion from entry* or a cease and desist order, or both, *limited to that person* unless, after considering the effect of such exclusion or order upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the Commission finds that such exclusion or order should not be issued.

19 U.S.C. § 1337(g)(1) (emphases added). Accordingly, pursuant to the language of the statute, after finding that any waiver by Crocs of its infringement contentions against the Defaulting Respondents was irrelevant because the Commission had to accept the complaint allegations as true and enter an exclusion order under Section 337(g)(1), the Commission could only issue an exclusion order "limited" to those respondents it had found in default—i.e., an LEO.[4] Thus, we hold that the Commission provided a sufficient basis for its issuance of an LEO, and its actions were not arbitrary, capricious, an abuse of its discretion, or otherwise not in accordance with law.

---

[4] Crocs does not argue it could avail itself of 19 U.S.C. § 1337(g)(2), which allows for the entry of a GEO in an investigation involving default only if all respondents to the investigation do not appear. 19 U.S.C. § 1337(g)(2) (explaining that a GEO "may be issued if—(A) no person appears to contest an investigation concerning a violation of the provisions of this section, (B) such a violation is established by substantial, reliable, and probative evidence, and (C) the requirements of subsection (d)(2) are met.").

CONCLUSION

We have considered Crocs's remaining arguments and find them unpersuasive.  For the foregoing reasons, we dismiss Crocs's appeal as to the Commission's finding of no violation by the Active Respondents and affirm the Commission's decision entering an LEO against the Defaulting Respondents.

**DISMISSED-IN-PART AND AFFIRMED-IN-PART**

COSTS

Costs to Appellee.